At this term, the following opinions were given:-—
Kirkpatrick, C. J.
— I am of opinion that there ought to be a new trial, on the ground of the inadmissibility of the testimony of Allen. It is going farther than the authorities will justify, and is against law and reason; and would lead to the most dangerous consequences if adopted as a rule. Being satisfied on this point, it is unnecessary for me to say any thing further.
Pennington J.
— As to the first objection to the verdict, it appears to me to stand thus: The defendant, in his pleas, puts his defence on two grounds. First, that he was not guilty of the trespass. Second, that the locus in quo was his several fishery; either of which was sufficient. The jury have given no answer to one of these points of defence, to wit, the second, unless by finding the defendant guilty of fishing in the free fishery of the plaintiff. This at most is only by way of argument and inference; that is, it being the free fishery of the plaintiff, it cannot therefore, be the several fishery of the defendant. This is not sufficient. The finding should have been directly on ("*] the issue. If I am right in this there has been a mistrial; and there must be a venire de novo. But lest this should not be thought satisfactory, I will examine this case farther; in doing which, I will consider the first objection out of the case. The jury have found the defendant guilty on two counts, to wit, the 3d and Tih. The one for fishing in the free fishery of the plaintiff, and fish there found taking and carrying away; the other for cutting and spoiling a certain net line of the plaintiff, and have assessed entire damages. Both these counts must be supported, or the plaintiff has got damages for injuries he never suffered. In order to apply the evidence to the third count, we must examine what is meant in legal contemplation by a free fishery. Sir William Blackstone says, that a free fishery is an exclusive right to fish in a public river; that it is a royal franchise derived by royal grant; and as these grants were prohibited by the great charter, the grant must be previous to that charter, 2 Com. 39, 40, 417, Jacob’s L. B. Fishing. But Lord Coke, 1 Inst. 22, considers a free fishery the same as a common fishery; Eyre J. 2 Salk. 637, is made to say, that libera ex vi termini, did imply common, which Holt, C. J. and Dolbin, J. denied. Mr. Hargrave in his note on the above passage in the institutes, has not solved the question. I am inclined to think Justice Blackstone is right; but take it which way we will, it is against the plaintiff. If Mr. Justice Blackr *686 stone is correct, a free fishery cannot exist in this country; the crown being restrained from making such grants long before the discovery of America. But even if this was not the case, yet no evidence was given of such grant, or even a prescription, which pre-supposes a grant. If Sir Edward Coke’s interpretation is to prevail, a free fishery is a common fishery; that is, commonto all the citizens of the state; and if so the plaintiff had no right to the fish before they were caught; and the jury having assessed damages for taking the fish, as well as for cutting the line, have done wrong.
[*] I am disposed, however, to take broader ground, lest I may be understood as acquiescing in an authority assumed by certain persons, of appropriating to their exclusive use thopriviledge of taking fish in certain portions of this important river. There has not been proof made, which under any form of pleading, would vest in Yard a right to those fish before they were taken. The River Delaware below the falls, is a large public river, a branch of the sea, in every part of which, the tide ebbs and flows; prima facie all the people of the State have a liberty of fishing in it. The presumptive right to fish in this river, being in the people of the State, it must be considered as remaining in them, until some person has gained an exclusive right, derogating from this common right, and shutting it out. That great lawyer"and excellent man, Sir Matthew Hale, lays it down as a maxim, that the common people of England, have regularly a liberty to fish in the sea, and the creeks and arms thereof, as a public common of fishery, and that they may not, without injury to their rights, be restrained of it. He admits however, that a subject may have gained a properly exclusive of that common liberty. Harg. Lato Tracts-11. In this case, the plaintiff has given some (evidence of an undivided title, in common with others, derived from Caleb Carman. But he has not attempted to shew a right in Caleb Carman, or that he ever had any. The presumption of law is against this exclusive claim, and therefore, the onus was on the plaintiff, 1 Mod. 105. No doubt but that both the plaintiff and defendant will admit the right of Caleb Carman, as they both pretend to derive title from him. But I am not satisfied that two litigant parties are to be indulged in admitting rights, incompatible with the rights of the people, and thereby endangering, the rights of every member of the community. In all cases, I think it is the duty of the Court to require proof of the existence of such exclusive right, before it will suffer a recovery founded on it. It is a title set up against the liberties and *687 privileges of Hie people. The exercise of [*] this exclusive s-ight of fishing in the arms of tiie sea and great rivers, was thought by our English ancestors, a restraint on their natural rights, as odious and more injurious than the game lavs. In every point of view that this case has presented itself to my mind, the verdict cannot be sustained.
The view I have taken of the case, precluded the necessity of giving an opinion as to the admission of the testimony of Alien. For, let that be as it may, I think, that the verdict cannot be supported, and that a new trial ought to he had.
Rosseix, .T. — Was satisfied that a new trial be had.
Rule for a new trial made absolute.